Filed 1/26/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H049698 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 21CR006264) |
| v. | |
| ALAN CHRISTOPHER ORTIZ, | |
| Defendant and Appellant. | |

Under Penal Code section 1385,[1] trial courts have long had broad discretion to dismiss a charge or allegation "in furtherance of justice." (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530-531 (*Romero*).) As the California Supreme Court has recognized, however, " 'the concept' of 'furtherance of justice' . . . is ' "amorphous." ' " (*People v. Williams* (1998) 17 Cal.4th 148, 159 (*Williams*).) The Legislature in Senate Bill No. 81 (2021-2022 Reg. Sess.) (Sen. Bill 81) has now given greater definition to the concept by enumerating certain mitigating circumstances which the trial court—"[i]n its exercise of discretion"—is to "weigh[] greatly" in favor of dismissal of an enhancement, unless "dismissal of the enhancement would endanger public safety." (§ 1385(c)(2).) Defendant Alan Christopher Ortiz asks us to interpret the great weight contemplated by section 1385(c)(2) as amounting to a presumption in favor

---

[1] Undesignated statutory references are to the Penal Code. We refer to subdivision (c) of section 1385 as section 1385(c).

of dismissal that is rebuttable only by a danger to public safety. We, however, read both the plain language of the statute and the legislative history as reflecting the Legislature's considered rejection of such a presumption. Accordingly, we affirm.

## I. BACKGROUND

On August 6, 2021, Ortiz took a baseball bat to an unoccupied parked Jeep belonging to a random stranger, breaking the window and damaging the doorframe. Ortiz "wanted to 'let out some anger[]' following an argument with his mother."

The Monterey County District Attorney charged Ortiz with one count of felony vandalism causing property damage in excess of $400 (§ 594, subd. (b)(1)). The district attorney alleged that Ortiz had one prior strike (§§ 1170.12, subd. (c)(1), 667, subd. (e)(1)), an attempted robbery (§§ 211, 664) conviction in September 2020. Ortiz pleaded no contest and admitted the prior strike.

At the sentencing hearing, the only evidence before the court was the probation officer's presentence investigation report, which summarized the nature and circumstances of the current offense and the following information from Ortiz's background.

Ortiz, 28 years old at the time of sentencing, had associated with a criminal street gang from the age of 12 and had accrued a succession of sustained juvenile petitions, adult convictions, and violations of probation and parole. According to jail records, "Ortiz was known for assaultive behavior and a history of assaulting jail staff[,]" including during his detention on the current offense.

Ortiz's supervising parole agent reported that a month after his most recent release from prison, Ortiz started using methamphetamine, was obliged to leave his sister's house for violating her rules, and, once homeless, increased his methamphetamine use. From that point, Ortiz violated his conditions of parole multiple times by absconding and having drug paraphernalia. The parole agent tried to enroll Ortiz in drug treatment programs, but Ortiz would either disappear or refuse to go, at most spending one week in

a residential program around May 2021 before his participation ended with a positive drug test.

Ortiz reported that he drinks "three to four 'tall cans[]' of beer weekly to the point of intoxication," smokes approximately two grams of marijuana per day, and smokes 1-2 grams of methamphetamine per day. Ortiz said he has a " 'slight addiction to drugs' " and expressed interest in residential treatment. Ortiz was unemployed and not seeking employment, as he had "chosen to use drugs instead and panhandles when he needs money."

Ortiz was diagnosed with schizophrenia in 2013 and depression at some unspecified time. Ortiz reported that he takes medication to treat his symptoms for both, including when not in custody. However, Ortiz's parole agent expressed doubt as to whether Ortiz "remains medication compliant as claimed when not in custody," stating that "Ortiz has a history of self-medicating with methamphetamine."

In his *Romero* motion, Ortiz argued that two mitigating factors should guide the trial court to dismiss the prior strike: (1) his current offense was "connected to mental illness"; and (2) his current offense was not a violent felony as defined in section 667.5, subdivision (c). Through counsel, Ortiz acknowledged his lengthy criminal history but argued "there do not appear to be any sustained felony convictions for acts of violence upon others." Ortiz's counsel urged that Ortiz had "been arrested and convicted enough times in his life to know this all needs to stop. [He is a] man with a specific diagnosis who . . . need[s] to fully commit to sobriety, to taking his psychotropic medications when and as prescribed[,] to focus[] on applying to . . . services . . . to . . . improve his current living situation[,] [and] to reach[] out for the help that many organizations would . . . offer him if he sought their assistance. [He] realizes that if he doesn't put the effort in, then nothing will change. If nothing changes, then he will be back again and again and again on one low level matter after another." Ortiz asked "the court [to] take a chance with [him]."

Denying the *Romero* motion, the trial court summarized the caselaw governing dismissal of prior strikes and stated, "[b]eyond that, Penal Code Section 1385(c) . . . lists [nine] specific factors, which, if found by the Court, will strongly support the exercise of the Court's discretion to dismiss one or more enhancements." The trial court found that there was nothing about Ortiz's present felony that was favorable to his position and rejected Ortiz's assertion that the current offense was connected to mental illness. The trial court did acknowledge, however, that the current offense, as a matter of law, was "not a violent felony as defined in Penal Code Section 667.5(c)," a factor that the court "weigh[ed] strongly in favor of dismissal of the prior strike allegation."

Notwithstanding the mitigating circumstance, the trial court concluded that countervailing considerations outweighed the mitigating factor in the furtherance of justice. Specifically, the trial court found that numerous factors weighed against dismissal: Ortiz's past convictions and probation/parole violations; his assaultive behavior in jail and his history of assaulting jail staff; his use of alcohol, marijuana, and methamphetamine; his failure to dedicate himself to treatment for his substance use; his decision not to seek employment because he preferred using drugs and panhandling when he needs money; his association with a criminal street gang; and the specific facts surrounding the current offense, including that Ortiz broke the window of a stranger's parked car with a baseball bat because he was "pissed off" after arguing with his mother and that Ortiz stated that he was under the influence of methamphetamine at the time. The trial court reasoned that although "the [instant] vandalism offense does not appear to be as serious as his prior felony convictions, it is apparent that he continues to engage in criminal conduct that is impulsive and of increasing concern given that he engaged in aggressive behavior out of anger in an effort to make himself feel better."

The trial court imposed a lower-term sentence of 16 months in prison for the single count of felony vandalism, doubled to 32 months as a consequence of the prior strike conviction, with 321 days of credit for time served. Ortiz timely appealed.

4

## II. DISCUSSION

**A.     *Romero***

A trial court's authority under section 1385, subdivision (a), to dismiss "an action" includes the authority to dismiss allegations of prior serious or violent convictions (i.e., prior strikes) in the furtherance of justice, considering " ' "both . . . the constitutional rights of the defendant, and the interests of society represented by the People . . . ." ' " (*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted; see also *Williams*, *supra*, 17 Cal.4th at p. 161 [identifying factors to be considered in determining whether a defendant "may be deemed outside the scheme's spirit, in whole or in part"].)

We review for abuse of discretion the grant or denial of a *Romero* motion. (*Williams*, *supra*, 17 Cal.4th at p. 162; see also *People v. Garcia* (1999) 20 Cal.4th 490, 503.) Absent a showing that the trial court's refusal to dismiss a strike allegation was arbitrary or irrational, we presume that the court " ' "acted to achieve [the] legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) Such a discretionary decision " ' "will not be reversed merely because reasonable people might disagree." ' " (*Ibid*.)

**B.     *Senate Bill 81 and Section 1385(c)***

Senate Bill 81, effective January 1, 2022, amended section 1385 " 'to specify factors that the trial court *must* consider when deciding whether to strike enhancements from a defendant's sentence in the interests of justice.' " (*People v. Johnson* (2022) 83 Cal.App.5th 1074, 1091 (*Johnson*), italics added, review granted Dec. 14, 2022, S277196; *Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 501-502; see also § 1385(c)(2), (7).) However, the specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is "in furtherance of justice." (§ 1385(c)(1)-(2); *Johnson*, *supra*, 83 Cal.App.5th at p. 1091 [enactment of Senate Bill 81 "reinforced" conclusion that "Legislature intended to confer

5

on trial courts a range of sentencing options and broad discretion to choose among them"].)

Senate Bill 81 added subdivision (c), which provides,[2] "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385(c)(1).) "In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385(c)(2).)

The mitigating circumstances identified in the subparagraphs include, among others: (1) "The current offense is connected to mental illness[;]" and (2) "The current offense is not a violent felony as defined in subdivision (c) of Section 667.5." (§ 1385(c)(2)(D) & (F).) "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385(c)(5).)

---

[2] Section 1385(c) was further modified by amendments that went into effect on June 30, 2022. Those amendments did not alter the substantive statutory provisions we discuss here.

**C.** *Analysis*

Ortiz contends that the trial court erred in its application of section 1385(c) in three ways: (1) the trial court did not find that Ortiz's current offense was "connected to mental illness;" (2) the trial court did not treat the mitigating circumstances as weighing greatly in favor of dismissing the enhancement; and (3) the trial court was required to grant the motion if any of the mitigating circumstances were present, unless it made a finding that Ortiz would endanger the public safety if it granted the motion.

Assuming for purposes of this appeal that the trial court was correct in its threshold determination that section 1385(c) applied at all, Ortiz has not shown that the trial court misapplied subdivision (c) here.[3]

First, Ortiz argues that the trial court failed to give "great weight to evidence offered by the defendant to prove" that the current offense was "connected to mental illness." (See § 1385(c)(2).) In the trial court, Ortiz relied on the probation report, which reflected that Ortiz was diagnosed with both schizophrenia and depression, though his self-reported compliance with prescribed medication was subject to dispute, given his use of methamphetamine. Ortiz further asserted, given the history documented in the probation report, that he suffers from an addiction disorder.

The trial court acknowledged Ortiz's schizophrenia diagnosis but noted that Ortiz had not provided "records or reports by qualified medical experts or . . . any evidence that [he] displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." Accordingly, the trial court did not conclude that Ortiz's mental illness "substantially contributed to the defendant's involvement in the commission of the vandalism offense." Indeed, there was no evidence identifying potentially relevant symptoms of schizophrenia or depression, nor any evidence (or even reasoned argument)

---

[3] Ortiz's appellate arguments depend on the disputed premise that section 1385(c) applies to strike priors. To the extent it does not, as the Attorney General argues, Ortiz has asserted no alternative basis for reversal.

7

linking those symptoms to Ortiz's commission of the current offense or his reported anger at his mother.[4] By its terms, the statute requires the trial court to consider "relevant and credible evidence" before it "may" find that the offense is connected to mental illness. (See § 1385(c)(5), italics added.) We identify no error in the trial court's determination: the record here did not compel it to reach the opposite conclusion.[5]

Second, even though the trial court did not find that the offense was connected to mental illness, the trial court did find that a subdivision (c) mitigating factor was present—Ortiz's current offense was not violent. (See § 1385(c)(2)(F).) The trial court weighed the mitigating factor strongly in favor of granting the requested dismissal but concluded that other factors outweighed it. In so doing, the trial court did not abuse its discretion.

To the extent Ortiz contends that the trial court failed to give this mitigating factor great weight, we disagree with Ortiz's construction of the trial court's oral remarks. In its introductory remarks, the trial court stated that "there is nothing" about the "present

---

[4] There was evidence that could be interpreted to support a connection between Ortiz's diagnosed mental illnesses and drug use—Ortiz's parole agent stated that Ortiz used methamphetamine to self-medicate. There was also evidence that Ortiz was under the influence of methamphetamine on the day of the offense. But Ortiz did not draw those connections for the trial court and instead relied on the bare fact of his diagnoses to assert that his mental illness "substantially contributed to [his] involvement in the commission of the offense." (§ 1385(c)(5).)

[5] It is immaterial to our conclusion whether the appropriate standard of review, as to this specific conclusion, is abuse of discretion or substantial evidence. Pursuant to section 1385(c), Ortiz bore the burden of persuasion. Thus, even if the trial court's determination is best understood as a factual finding subject to review for substantial evidence, the question before us would be whether the evidence *compels* a finding in favor of Ortiz as a matter of law. (See generally *In re. I.W.* (2009) 180 Cal.App.4th 1517, 1528 [discussing application of substantial evidence standard where the issue on appeal turns on a failure of proof at trial], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) It did not. Even if the evidence favorable to Ortiz is "afford[ed] great weight" (§ 1385, subd. (c)(2)), the gaps in the evidentiary showing preclude a determination that the evidence compelled a finding in Ortiz's favor.

felony or [the] prior strike conviction that is favorable to Ortiz's position." But the trial court proceeded to acknowledge that "the current offense is not a violent felony" such that "a mitigating factor does weigh strongly in favor of dismissal of the prior strike allegation," but determined that the mitigating factor was outweighed by countervailing considerations. While the trial court's initial statement could be construed as overbroad, we understand it to refer to the specific circumstances of the present vandalism offense as compared to similar offenses, rather than vandalism's legal classification as a nonviolent offense. The court's detailed explanation of its reasoning demonstrates that, as directed by section 1385(c), it engaged in a holistic balancing with special emphasis on the enumerated mitigating factors. (See § 1385(c)(1)-(2); see also *Carmony*, *supra*, 33 Cal.4th at pp. 376-377 [the party attacking the judgment must clearly show that the decision was irrational or arbitrary].)

To the extent Ortiz contends that the mitigating factor warranted a presumption in favor of dismissal that could only be rebutted by a showing that dismissal would endanger public safety, we disagree with Ortiz's construction of section 1385(c)(2)(B).

The plain language of section 1385(c)(2) contemplates the trial court's exercise of sentencing discretion, even as it mandates that the court give "great weight" to evidence of enumerated factors. The legislative history of Senate Bill 81 reflects that this was no accident: the language of section 1385(c)(2) as enacted replaced proposed language that would have mandated "a presumption that it is in the furtherance of justice to dismiss an enhancement" that could only "be overcome by a showing of clear and convincing evidence that dismissal of the enhancement would endanger public safety." (See Sen. Bill No. 81 as amended August 30, 2021; see also Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Aug. 30, 2021, at p. 2 [reflecting that Assembly amendments to Sen. Bill No. 81 "[r]emove[d] the presumption that it is in the interests of justice to dismiss an enhancement when specified circumstances are found to be true and instead provide[] that the court shall, in exercising

9

its discretion to dismiss an enhancement in the interests of justice, consider and afford great weight to evidence of those specified circumstances"].) Had the Legislature intended to establish a rebuttable presumption as Ortiz posits, it could have approved the language of the earlier version of the bill. We are unable to ignore the fact that it did not.

The Legislature's abstention in section 1385(c)(2) from the language of rebuttable presumption is consonant with the elastic character of the particular mitigating circumstances on which Ortiz relies and the trial court's assessment of evidence as "reliable and credible." (See § 1385(c)(5).) For example, a "connect[ion] to mental illness" does not, as a practical matter, lend itself to the one-size-fits-all formalism of a presumption that may only be overcome by a danger to public safety.[6] In the universe of cases where a defendant suffers from mental illness, the strength of the connection between the mental condition and the commission of the current offense will vary widely depending on a host of factors such as the character of the mental illness, the nature of the symptoms exhibited near the time of the offense, the defendant's amenability to treatment, and the nature of the particular offense.

The language of section 1385(c)(2) as ultimately enacted also reflects a legislative recognition that a trial court's exercise of sentencing discretion involves more than a strictly binary weighing of mitigation against public safety. "[G]enerally applicable sentencing principles" relevant to a court's determination of whether dismissal is in furtherance of justice "relat[e] to matters such as the defendant's background, character,

---

[6] At the other end of the spectrum, as to the circumstances enumerated at section 1385(c)(2)(B) (multiple enhancements in a single case) and (c)(2)(C) (enhancements increasing sentence above 20 years), the Legislature has unambiguously provided that the operative enhancement(s) "shall be dismissed." These circumstances, we note, are unlike the other seven listed in that they are not mitigating in any conventional sense—as to either the nature and circumstances of the current offense or the defendant's "background, character, and prospects" (see *Williams*, *supra*, 17 Cal.4th at p. 160, fn. omitted)—but only by operation of law.

10

and prospects." (See *Williams*, *supra*, 17 Cal.4th at p. 160, fn. omitted.) Those principles require consideration of circumstances in mitigation (and aggravation) in the broader context of the recognized objectives of sentencing, which are not limited to public safety. (See Cal. Rules of Court, rule 4.410.)

We acknowledge that the court in *People v. Walker* (2022) 86 Cal.App.5th 386 (*Walker*) has adopted the construction urged by Ortiz. The *Walker* court observed that (1) "the court '*shall* dismiss an enhancement if it is in the furtherance of justice to do so,' " subject to an inapplicable exception (*Walker*, *supra*, 86 Cal.App.5th at p. 398); (2) "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances" set forth in the statute are present (§ 1385(c)(2); see *Walker*, *supra*, 86 Cal.App.5th at p. 398); and (3) "[p]roof of the presence of one or more of" the mitigating circumstances " '*weighs greatly* in favor of the enhancement . . . *unless* the court finds that dismissal of the enhancement would endanger public safety' " (§ 1385(c)(2); *Walker*, *supra*, 86 Cal.App.5th at p. 398). From this, the court concluded that the statute as a whole "places a thumb on the scale that balances the mitigating circumstances favoring dismissal against whether dismissal would endanger public safety, and tips that balance in favor of dismissal unless rebutted by the court's finding that dismissal would endanger public safety." (*Walker*, *supra*, 86 Cal.App.5th at pp. 398-400.)

Although we agree that section 1385(c)(2)(D) seeks to "fine tune" the trial court's exercise of discretion (*Walker*, *supra*, 86 Cal.App.5th at p. 395), we respectfully decline to follow *Walker* in its more formalistic reading of the provision. In our view, the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement. To be sure, the Legislature has invested the enumerated mitigating circumstances with great weight, both in the trial court's evaluation of the defendant's evidence in the first instance and in the trial court's consideration of the mitigating circumstance once established. But this does not preclude a trial court from

11

determining that countervailing factors—other than the likelihood of physical or other serious danger to others—may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice. Interpreting the statute, as the *Walker* court does (see *id.* at pp. 391, 399), to require the trial court to dismiss an enhancement absent a finding that dismissal would endanger public safety would divest the trial court of its ultimate discretion under the statute to determine what is in furtherance of justice, considering all relevant factors.

The *Walker* court's construction of the statute echoes the prior iterations of Senate Bill 81 which we have noted were superseded by amendment in the Assembly prior to enactment—the rebuttable presumption contemplated in the prior version of the statute was replaced with language that expressly acknowledged a trial court's exercise of "discretion" under section 1385(c). (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Aug. 30, 2021, at p. 2; Sen. Bill No. 81 (2021-2022 Reg. Sess.) as amended Apr. 27, 2021.) This legislative history only bolsters our reading of the statutory text.

Ortiz has not contended that it was inappropriate for the trial court to consider any of the factors that it decided collectively outweighed the mitigating factor. Although he dismisses the trial court's analysis as "a boilerplate recitation of *Romero/Williams* factors," he does not suggest Senate Bill 81 supplanted rather than supplemented the factors the California Supreme Court has long deemed essential to the "furtherance of justice" inquiry. (See § 1385, subds. (a), (c)(1)-(2).) Indeed, assuming section 1385(c) applies in the present context at all, we discern no reason why it would render the consideration of heretofore proper factors improper. (See generally *Johnson*, *supra*, 83 Cal.App.5th at p. 1091.)

Assuming section 1385(c) governed the exercise of discretion here, the trial court did not abuse its discretion. It assessed the claimed mitigating factors and, finding one such factor, acknowledged its great weight but determined that other factors were

12

collectively weightier.  In so doing, the trial court acted within its discretion.  (See generally *Carmony*, *supra*, 33 Cal.4th at pp. 376-377; *Johnson*, *supra*, 83 Cal.App.5th at p. 1091; § 1385, subd. (c)(1)-(2).)

### III.    DISPOSITION

The judgment is affirmed.

_____
LIE, J.

WE CONCUR:


_____
GREENWOOD, P.J.


_____
GROVER, J.


*People v. Ortiz*
H049698

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>No.: 21CR006264 |
| | |
| Trial Judge: | The Honorable Rafael Vasquez |
| | |
| Attorney for Defendant and Appellant<br>Alan Christopher Ortiz: | Maggie Shrout<br>under appointment by the Court<br>of Appeal for Appellant |
| | |
| Attorneys for Plaintiff and Respondent<br>The People: | Rob Bonta<br>Attorney General<br><br>Lance E. Winters,<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence,<br>Senior Assistant Attorney General<br><br>Donna M. Provenzano,<br>Supervising Deputy Attorney General<br><br>Melissa A. Meth,<br>Deputy Attorney General |

*People v. Ortiz*
H049698